FILED

2026 Mar-10  PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

EAGLE FORUM OF ALABAMA, a domestic nonprofit corporation,

_Plaintiff,_

v.

TUSCALOOSA PUBLIC LIBRARY BOARD OF TRUSTEES, the governing body of the Library; JEFF HINTON, in his official capacity as Chair of the Board; RANDY FONDREN, in his official capacity as Vice Chair of the Board; BLANCHE GUNTER, in her official capacity as Secretary of the Board; BRYAN WINTER, in his official capacity as Treasurer of the Board; KATHRYN DRAGO, in her official capacity as a member of the Board; ANN GRAVES, in her official capacity as a member of the Board; OCTAVIA MILES, in her official capacity as a member of the Board; SANDRA RAY, in her official capacity as a member of the Board; LISA WALDROP SHATTUCK, in her official capacity as a member of the Board; RYAN STALLINGS, in his official capacity as a member of the Board; MARGARET NASIR, in her official capacity as a member of the Board; BESS MILLER, in her official capacity as an ex officio member of the Board; JENNIFER PEARSON, in her official capacity as the Director of Tuscaloosa Public Library; AMY PATTON, in her official capacity as the Library's Deputy Director; MARY BUNTIN, in her official capacity as a Library employee; CITY OF TUSCALOOSA, ALABAMA, a municipal corporation; CITY OF NORTHPORT, ALABAMA, a municipal corporation; TUSCALOOSA COUNTY, ALABAMA, a body corporate;

_Defendants._

Case No.

### VERIFIED COMPLAINT

## INTRODUCTION

1.    This civil rights action seeks to protect a Christian organization from unconstitutional religious discrimination.

2.    Eagle Forum of Alabama is a Christian organization that hosts events to encourage discussions, inform citizens of important issues, and encourage involvement in the political process.

3.    The Tuscaloosa Public Library invites a wide variety of groups to use its Rotary Room meeting space, but Defendants denied access to Eagle Forum solely because of its religious character and activity.

4.    The Board of the Tuscaloosa Public Library maintains and enforces a policy that allows secular organizations to use the Library's meeting spaces while denying that same benefit to religious groups. Such religious discrimination is "odious to our Constitution." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 467 (2017).

5.    The Library's policies have deprived and continue to deprive Eagle Forum of its rights under the First and Fourteenth Amendments to the United States Constitution.

6.    Eagle Forum thus seeks injunctive and declaratory relief and nominal damages to end this constitutional violation and grant it equal access to the Library's meeting spaces.

## JURISDICTION & VENUE

7.    This civil rights action raises federal questions under the First and Fourteenth Amendments of the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

8.    This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

9.    This Court has supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367.

10.    This Court has authority to award the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–02, 28 U.S.C. § 1343, and FED. R. CIV. P. 57 and 65.

11.    This Court has authority to award costs and attorney's fees under 42 U.S.C. § 1988.

12.    This Court has authority to award nominal damages. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285–93 (2021).

13.    Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because the Defendants are located in this district and division, and the acts described in this Complaint occurred in this district and division.

## PLAINTIFF

14.    Eagle Forum of Alabama is a domestic nonprofit corporation organized under the laws of Alabama. It is a state chapter affiliated with the national Eagle Forum organization, which is a separate nonprofit corporation organized under Illinois law. Eagle Forum of Alabama is governed by the same bylaws as the national organization, a copy of which is **attached as Exhibit 1**. Unless otherwise indicated, "Eagle Forum" refers to Plaintiff, not the national organization.

## DEFENDANTS

15.    Defendant Board of Trustees of the Tuscaloosa Public Library is the body responsible for the Library's governance, financial management, and strategic planning. Ala. Code § 11-90-2; *see Harris v. Monroe Cnty. Pub. Libr. Bd. of Trs.*, No. 22-11236, 2023 WL 6866602, at *1 (11th Cir. Oct. 18, 2023). The Library Board has the "full power and authority" to "[m]anage and control" the operations of the Library. Ala. Code § 11-90-3(a)(6). The Board is made up of eleven members; five appointed by

3

the City of Tuscaloosa, five appointed by Tuscaloosa County, and one appointed by the City of Northport. 1998 Ala. Acts No. 98-566, 1269.

16.     Defendant Jeff Hinton is the Chair of the Library's Board of Trustees. He was appointed to the Board by Tuscaloosa County. He is sued in his official capacity only.

17.     Defendant Randy Fondren is the Vice Chair of the Library's Board of Trustees. He was appointed to the Board by the City of Northport. He is sued in his official capacity only.

18.     Defendant Blanche Gunter is the Secretary of the Library's Board of Trustees. She was appointed to the Board by Tuscaloosa County. She is sued in her official capacity only.

19.     Defendant Bryan Winter is the Treasurer of the Library's Board of Trustees. He was appointed to the Board by Tuscaloosa County. He is sued in his official capacity only.

20.     Defendant Kathryn Drago is a member of the Library's Board of Trustees. She was appointed to the Board by the City of Tuscaloosa. She is sued in her official capacity only.

21.     Defendant Ann Graves is a member of the Library's Board of Trustees. She was appointed to the Board by Tuscaloosa County. She is sued in her official capacity only.

22.     Defendant Octavia Miles is a member of the Library's Board of Trustees. She was appointed to the Board by the City of Tuscaloosa. She is sued in her official capacity only.

23.     Defendant Sandra Ray is a member of the Library's Board of Trustees. She was appointed to the Board by the City of Tuscaloosa. She is sued in her official capacity only.

24.    Defendant Lisa Waldrop Shattuck is a member of the Library's Board of Trustees. She was appointed to the Board by the City of Tuscaloosa. She is sued in her official capacity only.

25.    Defendant Ryan Stallings is a member of the Library's Board of Trustees. He was appointed to the Board by Tuscaloosa County. He is sued in his official capacity only.

26.    Defendant Margaret Nasir is a member of the Library's Board of Trustees. She was appointed to the Board by the City of Tuscaloosa. She is sued in her official capacity only.

27.    Defendant Bess Miller is an ex officio member of the Library's Board of Trustees. She is sued in her official capacity only.

28.    Defendant Board of Trustees of the Tuscaloosa Public Library and each of its members oversee Library operations, including decisions about who may use the Rotary Room, and create or approve Library policies, including those challenged here. They play a role in creating and enforcing the policies governing use of the Rotary Room, including against Plaintiff. Furthermore, they were aware of Plaintiff's demand letter and chose to continue enforcing Defendants' unconstitutional policies.

29.    Defendant Jennifer Pearson is the Director of the Library. As Director, she is charged with administering direction and management of the overall operations of the Library in accordance with Board-adopted policies. The challenged Rotary Room reservation policy authorizes the Director (or any person she designates) to either grant or deny permission to use the Library's Rotary Room. She thus played a role in enforcing Defendants' unconstitutional policies against Plaintiff. She also received Plaintiff's demand letter and chose to continue enforcing Defendants' unconstitutional policies. She is sued in her official capacity only.

30.    Defendant Amy Patton is the Deputy Director of the Library. As Deputy Director, she is charged with assisting the Director in administering direction and

management of the overall operations of the Library in accordance with Board-adopted policies. Defendant Patton personally issued communications citing the unconstitutional policy to exclude Eagle Forum. She thus played a role in enforcing Defendants' unconstitutional policies against Plaintiff. She also received Plaintiff's demand letter and chose to continue enforcing Defendants' unconstitutional policies. She is sued in her official capacity only.

31.    Defendant Mary Buntin is an employee of the Library and personally issued communications citing the unconstitutional policy to exclude Eagle Forum. She thus played a role in enforcing Defendants' unconstitutional policies against Plaintiff. She is sued in her official capacity only.

32.    Defendant City of Tuscaloosa, Alabama, is a municipal corporation under the laws of the State of Alabama. The City of Tuscaloosa jointly established the Library, appoints members to the Library's Board of Trustees, and funds the Library. The Library is an instrumentality of the City of Tuscaloosa, which oversees the policies and actions of the Board. *See* Ala. Code §§ 11-90-1, 11-90-2. On information and belief, the Library is not an independent juridical entity but a statutorily created instrumentality created solely by virtue of municipal and county action, such that liability under § 1983 attaches to the local government. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978).

33.    Defendant City of Northport, Alabama, is a municipal corporation under the laws of the State of Alabama. The City of Northport jointly established the Library, appoints members to the Library's Board of Trustees, and funds the Library. The Library is an instrumentality of the City of Northport, which oversees the policies and actions of the Board. *See* Ala. Code §§ 11-90-1, 11-90-2. On information and belief, the Library is not an independent juridical entity but a statutorily created

instrumentality created solely by virtue of municipal and county action, such that liability under § 1983 attaches to the local government. *Monell*, 436 U.S. at 690–94.

34.    Defendant Tuscaloosa County is a body corporate under the laws of the State of Alabama. The County jointly established the Library, appoints members to the Library's Board of Trustees, and funds the Library. The Library is an instrumentality of Tuscaloosa County, which oversees the policies and actions of the Board. *See* Ala. Code §§ 11-90-1, 11-90-2. On information and belief, the Library is not an independent juridical entity but a statutorily created instrumentality created solely by virtue of municipal and county action, such that liability under § 1983 attaches to the local government. *Monell*, 436 U.S. at 690–94.

35.    The municipal Defendants—Defendants City of Tuscaloosa, City of Northport, and Tuscaloosa County—are all responsible for overseeing Library operations and creating or approving Library policies, including the unconstitutional decisions and policies challenged here. On information and belief, they were aware of Plaintiff's demand letter and approved of or acquiesced in Defendants' decision to continue enforcing their unconstitutional policies.

36.    Each and every Defendant—whether institutional (*e.g.*, Defendant Board of Trustees of the Tuscaloosa Public Library), individual (*e.g.*, the members of Defendant Board of Trustees of the Tuscaloosa Public Library, Defendant Pearson, Defendant Patton, and Defendant Buntin), or municipal (*e.g.*, Defendants City of Tuscaloosa, City of Northport, and Tuscaloosa County) are all responsible for overseeing the Library; for creating, approving, or enforcing Defendants' unconstitutional policies against Plaintiff; or for the decisions made while implementing Defendants' unconstitutional policies against Plaintiff.

FACTUAL BACKGROUND

I.    **Eagle Forum's Purpose and Beliefs**

37.    Eagle Forum of Alabama was established in 1986 as a state chapter of the national Eagle Forum organization. Eagle Forum champions God, family, and country.

38.    Eagle Forum exists for several purposes, including "[t]o educate, inform, instruct and train the public on current national and local subjects beneficial to the community, consistent with the principles outlined" in the bylaws. Eagle Forum By-laws, Ex. 1 at 1.

39.    Eagle Forum strives to meet these purposes in a way that "present[s] a sufficiently full and fair exposition of pertinent facts to permit individuals and the public to form independent opinions or conclusions." *Id.*

40.    "Eagle Forum supports Holy Scriptures as providing the best code of moral conduct yet devised," and believes that "we owe our existence to a Creator who has endowed each of us with unalienable rights." *Id.* at 2.

41.    In its bylaws, Eagle Forum describes its mission "to enable citizens to participate in the process of self-government and public policymaking so that America will continue to be a land of individual liberty, sovereign independence, limited government, family integrity, private enterprise, and public and private virtue." *Id.*

42.    Membership in Eagle Forum is open to "[a]ny person who demonstrates substantial agreement with the purposes and principles" outlined in the bylaws, including the religious principles described, upon payment of dues and approval by the Board of Directors. *Id.* at 3.

43.    On its webpage describing its values, Eagle Forum advertises that it also supports a Biblical understanding of marriage and family. The organization affirms "that God established the family as the basic unit of society." Eagle Forum also affirms "[l]ife is sacred and should be protected at all costs," and "God made man to

8

have dominion over and to be a steward of the Earth." *Our Values*, EAGLE FORUM OF ALABAMA, https://perma.cc/NW7C-GEUR.

44. Eagle Forum hosts public events and meetings across the state to share the mission of Eagle Forum and facilitate community discussions.

45. A recent Eagle Forum meeting included a discussion on how citizens can inform local leaders about important issues, including an update on public libraries shelving explicit materials with graphic descriptions of sexual acts, erotic illustrations, and crude sexual dialogue.

46. Eagle Forum opens and closes its meetings with prayer and incorporates Scripture in many events. The intersection of faith and civic duty is often at the forefront of these events.

## II. The Library's Rotary Room Reservation Policy

47. The Library was jointly formed by the City of Tuscaloosa, the City of Northport, and Tuscaloosa County, which appoint Board members and oversee the Library's policies and actions.

48. The Library's Board of Trustees establishes and enforces policies governing library operations, and the Board oversees the Library's Director, Deputy Director, and other employees in managing the Library.

49. The Library's Director and Deputy Director manage Library operations in accordance with Board policies.

50. The Library has a meeting space known as the Rotary Room.

51. Use of the Rotary Room is governed by a policy adopted by the Board (the "Reservation Policy"). Tuscaloosa Public Library Rotary Room Reservation Policy (January 2025), **attached as Exhibit 2**.

52. The policy was last revised and approved by the Board in January 2025. *Id*. The relevant portions of the current Reservation Policy are materially identical to

the prior version of the Policy, last revised in 2014. *See* Tuscaloosa Public Library Rotary Room Reservation Policy (January 2014), **attached as Exhibit 3**.

53. The Reservation Policy broadly invites "organizations, groups, and their members" to use the Rotary Room when such use would not disrupt scheduled library programs or conflict with library-sponsored events. Ex. 2 at 1.

54. The Reservation Policy allows the Library to approve applications to use the Rotary Room for periods of six months or one year. Ex. 2 at 3.

55. Under the Reservation Policy, "[p]ermission to use the Library Rotary Room may be granted by the Director, or person designated by the Director...." *Id.* at 1.

56. The Reservation Policy also allows for the Rotary Room to be reserved and used by "public or private nonprofit organizations, i.e. cultural, educational and intellectual groups." *Id.* at 1. These groups may reserve the space "on a first-come, first-serve basis." *Id.*

57. The Library hosts many events in the Rotary Room. Recent Library-sponsored events in the Rotary Room included a "House Healer," a magician and historian presenting on the history of magic, and a meeting of the Tuscaloosa Crafters Guild. Bright Star Touring Theatre and Bobby the Balloon Guy also recently performed at the Library.

58. Cornerstone of Health advertised an event called "Depression & Anxiety 101" as taking place in the Rotary Room on February 12, 2025.

59. Mama's Wellnest, Back 2 Basics, and Diamonds for Doulas advertised an event called "Lets Talk About BREAST-feeding with Our Boots on The Ground" as taking place in the Rotary Room on August 23, 2025.

60. WeWellness, LLC, "an AI-powered health equity firm" advertised an event intended to "creat[e] a powerful space for connection and sharing," as taking place in the Rotary Room on August 30, 2025.

61.    The Girl Scouts of North-Central Alabama advertised a troop meeting in the Rotary Room on October 11, 2025.

62.    Girls Who Code University of Alabama advertised a "Hackathon" event in the Rotary Room on October 25, 2025.

63.    According to the Library's website, the "General Robert E. Rhodes" Camp of the Sons of Confederate Veterans meets regularly in the Library's Rotary Room.

64.    Although the Reservation Policy allows a wide variety of "public or private nonprofit organizations" to reserve and use the Rotary Room, the Policy specifically prohibits use of the room for "meetings of religious or sectarian groups for the purpose of preaching or otherwise demonstrating the beliefs of their members." Ex. 2 at 1.

### III.    Defendants Exclude Eagle Forum from Using the Rotary Room

65.    Eagle Forum applied to host events in the Rotary Room, and on November 25, 2024, the Library approved Eagle Forum's application for a period of one year. Rotary Room Application Approval Email, **attached as Exhibit 4**.

66.    On or around March 19, 2025, Eagle Forum used the Library's Rotary Room for a meet-and-greet and a screening of a political documentary film. This event did not disrupt any library programs or conflict with library-sponsored events.

67.    Eagle Forum then reserved the Library's Rotary Room for two additional meetings on August 2, 2025, and August 16, 2025.

68.    On July 11, 2025, Defendant Mary Buntin, a Library employee supervised by the other Defendants, sent Eagle Forum an email cancelling both reservations. Email from Library to Eagle Forum, **attached as Exhibit 5**. The email stated, "[b]ecause of the current political and social climate, the library has unfortunately made the decision to cancel your upcoming reservations on Saturday, August 2 and Saturday, August 16." *Id.* The email cited "policy 3c of our Rotary Room policies" as the sole justification for the Library's decision. *Id.*

69.     Section 3(c) of the Reservation Policy provides "The Library's Rotary Room may <u>not</u> be used for: meetings of religious or sectarian groups for the purpose of preaching or otherwise demonstrating the beliefs of their members." Ex. 2 at 1.

70.     Because Eagle Forum did not see the Library's cancellation email before the event scheduled for August 2, 2025, Eagle Forum members arrived for the event. There was another small meeting in the Rotary Room, but that group offered Eagle Forum the opportunity to use the space instead.

71.     Eagle Forum's August 2, 2025, event discussed recent political events and how Christian Scripture informs the narratives around those events. The event was advertised as a "conversation that connects today's headlines with eternal truth," and promised a "look at what Scripture reveals about these high-stakes narratives," noting "the Bible offers clarity, direction, and hope." The August 2 event did not disrupt any library programs or conflict with library-sponsored events.

72.     The event scheduled for August 16, 2025, did not take place following the cancellation by the Library. That event was scheduled to be a special reading of the U.S. Constitution.

73.     On August 5, 2025, Eagle Forum received an email from Defendant Amy Patton confirming the cancellations and informing Eagle Forum that the Library would not accept any future reservations from Eagle Forum. The email acknowledged "that this decision is different from your most recent requests," and again cited the Reservation Policy's limitation on "meetings of religious or sectarian groups for the purpose of preaching or otherwise demonstrating the beliefs of their members," as the sole basis for the cancellation. Email Excluding Eagle Forum, **attached as Exhibit 6**.

74.     On September 16, 2025, counsel for Eagle Forum issued a demand letter to the Library, advising that Eagle Forum's exclusion violates clearly established constitutional rights under the Free Speech and Free Exercise Clauses of the First Amendment. Demand Letter, **attached as Exhibit 7**.

75.    On October 1, 2025, counsel for the Library responded to Eagle Forum's demand letter, doubling down on its decision to exclude Eagle Forum. Library Response to Demand Letter, **attached as Exhibit 8**.

76.    On information and belief, the Library's Board, Director, Deputy Director, and the local government Defendants participated in the decision to respond to Eagle Forum's demand letter by maintaining its unconstitutional exclusion.

77.    Eagle Forum has lost numerous irreplaceable opportunities to express its views and those of its members because of Defendants' actions. Eagle Forum intended and currently intends to host additional meetings in the Library's Rotary Room, but it remains excluded solely because of its religious character and activity. Eagle Forum has met less regularly than it would have if it were able to use the Library's Rotary Room.

### ALLEGATIONS OF LAW

78.    At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants, who acted under the scope of their discretionary authority, under color of a statute, regulation, custom, or usage of the State of Alabama to cause deprivation of Eagle Forum's constitutional rights.

79.    Defendants were aware, or should have been aware, of clearly established constitutional law forbidding their exclusionary policy when the Board approved the Reservation Policy in 2025, when Defendants cancelled Eagle Forum's meetings in July 2025, when Defendants permanently excluded Eagle Forum in August 2025, and when the Library doubled down on its exclusion in response to Eagle Forum's demand letter.

80.    Defendants Patton and Buntin personally participated in Eagle Forum's exclusion by directly issuing communications citing the unconstitutional Reservation Policy to cancel and prohibit Eagle Forum events.

81.    Defendant Pearson supervised and/or personally participated in Eagle Forum's exclusion as the individual authorized to make (or delegate) decisions to grant or deny permission to use the Rotary Room. On information and belief, Defendant Pearson personally participated in the decision to exclude Eagle Forum from the Rotary Room. In addition, or in the alternative, Defendant Pearson's custom or policy of enforcing the Reservation Policy resulted in deliberate indifference to constitutional rights, and the facts support an inference that Defendant Pearson directed her subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them.

82.    The Board Defendants supervised and/or personally participated in Eagle Forum's exclusion by adopting and retaining the unconstitutional Reservation Policy, supervising Eagle Forum's exclusion from the Rotary Room, then ratifying the unconstitutional exclusion in response to Eagle Forum's demand letter. On information and belief, the Board Defendants personally participated in the decision to exclude Eagle Forum from the Rotary Room. In addition, or in the alternative, the Board Defendants' custom or policy of enforcing the Reservation Policy resulted in deliberate indifference to constitutional rights, and the facts support an inference that the Board Defendants directed their subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them.

83.    The local government Defendants supervised and/or personally participated in Eagle Forum's exclusion by overseeing and ratifying the adoption of the unconstitutional Reservation Policy. In addition, on information and belief, the local government Defendants participated in and ratified the unconstitutional exclusion in response to Eagle Forum's demand letter.

84.    The Library's Reservation Policy categorically prohibiting certain meetings based on their religious character and activity violates clearly established constitutional rights under the Free Exercise Clause. In 2017, the Supreme Court

emphasized the already "unremarkable" principle that government officials violate the Free Exercise Clause when they invite private organizations to participate in a public benefit but disqualify otherwise eligible organizations based on their religious character or activity. *Trinity Lutheran*, 582 U.S. at 462. The Supreme Court emphasized this principle three *more* times in the next eight years. *See Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 476 (2020); *Carson as next friend of O. C. v. Makin*, 596 U.S. 767, 768 (2022); *Mahmoud v. Taylor*, 606 U.S. 522, 561 (2025).

85.    The Library's Reservation Policy excluding religious meetings in public facilities also violates clearly established constitutional rights under the Free Speech Clause. The Supreme Court has repeatedly held that when a government body opens its facilities to outside groups, it cannot exclude groups based on their religious viewpoint. *See, e.g.*, *Widmar v. Vincent*, 454 U.S. 263 (1981); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993); *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001); *Shurtleff v. City of Bos.*, 596 U.S. 243 (2022).

86.    The Library's Reservation Policy also violates clearly established state constitutional rights under the Alabama Religious Freedom Amendment. ALA. CONST. art. I, § 3.01. This policy burdens religious exercise, but it is not the least restrictive means of advancing a compelling governmental interest.

87.    Reasonable governmental officials in Defendants' position would have known that their Reservation Policy violates constitutional rights by categorically excluding religious speech and assembly.

88.    Defendants' policies and practices cause Eagle Forum to suffer irreparable harm.

89.    Eagle Forum has no adequate or speedy remedy at law to correct or redress the deprivation of its rights by Defendants.

90.    Unless the conduct of Defendants is enjoined, Eagle Forum will continue to suffer irreparable injury.

COUNT I
**Violation of the Free Exercise Clause**
**(U.S. CONST. amend. I; 42 U.S.C. § 1983)**

91. Plaintiff incorporates by reference paragraphs 1–90.

92. The First Amendment forbids the government from "prohibiting the free exercise" of religion. U.S. CONST. amend. I.

93. The government cannot "exclude[ ] religious observers from otherwise available public benefits" solely because of their religious character and activity. *Carson,* 596 U.S. at 778. Such an exclusion amounts to a "penalty on the free exercise of religion that can be justified only by a state interest of the highest order." *Trinity Lutheran*, 582 U.S. at 458 (citation modified).

94. Eagle Forum exercises its religion in various ways, including opening and closing its meetings with prayer and featuring religious content in events.

95. Eagle Forum's religious beliefs are sincerely and deeply held.

96. "The Free Exercise Clause protects religious observers against unequal treatment and subjects to the strictest scrutiny laws that target the religious for special disabilities based on their religious status." *Trinity Lutheran*, 582 U.S. at 458 (citation modified).

97. Defendants have broadly invited public and private organizations to use the Library's Rotary Room.

98. Eagle Forum is a private nonprofit organization that is otherwise eligible to reserve the Rotary Room.

99. Defendants cited Eagle Forum's religious character and activity as the sole basis for the Library's decision to prohibit the organization from using the Rotary Room. This "policy expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character." *Trinity Lutheran*, 582 U.S. at 462.

100.    The Reservation Policy is not neutral or generally applicable because it targets religious groups and prohibits the use of the space by such groups "for the purpose of preaching or otherwise demonstrating the beliefs of their members." Ex. 2 at 1.

101.    By putting Eagle Forum to a choice between exercising its religious beliefs through faith-based programming at its events and using the Rotary Room, the Defendants burden and "penalize[ ] the free exercise of religion." *Carson*, 596 U.S. at 780 (citation modified).

102.    Defendants' Reservation Policy and practices therefore trigger strict scrutiny, but they neither serve a compelling interest nor are they narrowly tailored to achieve any purported compelling purpose.

103.    Defendants' Reservation Policy and actions therefore violate the Free Exercise Clause of the First Amendment, facially and as applied to Eagle Forum.

### COUNT II
### Violation of the Free Speech Clause
### (U.S. CONST. amend. I; 42 U.S.C. § 1983)

104.    Plaintiff incorporates by reference paragraphs 1–90.

105.    The First Amendment prohibits the government from "abridging the freedom of speech." U.S. CONST. amend. I.

106.    Speech, including oral, written, and symbolic expression, is entitled to comprehensive protection under the First Amendment.

107.    Religious and political speech are also fully protected by the First Amendment.

108.    Defendants have created a public forum by purposefully opening the Rotary Room to the public and making it generally available for reservation by "public or private nonprofit organizations, i.e. cultural, educational and intellectual groups" on a "first-come, first-serve basis," with the intention to "allow many different Organizations the opportunity to use the Library's public meeting room facilities." *See* Ex. 2 at 1, 3.

109.    "The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public, even if it was not required to create the forum in the first place." *Widmar*, 454 U.S. at 267–68. The Defendants are therefore "obligat[ed] to justify [their] discriminations and exclusions under applicable constitutional norms." *Id.* at 267. Defendants must show that content- and viewpoint-based restrictions are "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *Id.* at 270.

110.    The Library's Reservation Policy is a content-based restriction on speech because its application depends upon the message, subject matter, or idea discussed (here, religious "preaching" or "demonstrating the beliefs"). *See Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015).

111.    The Library's Reservation Policy is also a viewpoint-based restriction on speech because it generally allows agnostic and arm's-length discussions of religious topics, but prohibits certain perspectives or ideologies within that subject matter, namely, advocacy for certain religious beliefs as *true* by "preaching" and "demonstrating the beliefs." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

112.    There is no compelling government interest to justify these content- and viewpoint-based restrictions, and the Reservation Policy is not narrowly tailored to advance any compelling governmental interest.

113.    Even if the Rotary Room could only be considered a limited public forum, "[t]he State's power to restrict speech" in a limited public forum "is not without limits." *Good News Club*, 533 U.S. at 106. Any "restriction[s] must not discriminate against speech on the basis of viewpoint." *Id.*

114.    It is well established that "speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." *Id.* at 112.

115.    The only basis given by the Library for canceling Eagle Forum's room reservation was its policy against allowing the room to be used for "meetings of religious or sectarian groups for the purpose of preaching or otherwise demonstrating the beliefs of their members."

116.    Defendants have therefore engaged in unlawful content- and viewpoint-based discrimination. The Library cancelled Eagle Forum's events in the Rotary Room "solely because the [events would] deal[ ] with [a] subject from a religious standpoint." *Lamb's Chapel*, 508 U.S. at 394. This exclusion from the Rotary Room "discriminate[s] based on religious viewpoint and violate[s] the Free Speech Clause." *Shurtleff*, 596 U.S. at 259.

117.    Content- and viewpoint-based restrictions in any forum are unconstitutional.

118.    It is clearly established that Defendants' Reservation Policy and associated practices violate Plaintiff's right to free speech as guaranteed by the First Amendment to the United States Constitution.

119.    The Reservation Policy and Defendants' actions prohibiting use of the Rotary Room for "meetings of religious or sectarian groups for the purpose of preaching or otherwise demonstrating the beliefs of their members" therefore violate the Free Speech Clause of the First Amendment to the United States Constitution, facially and as applied to Eagle Forum.

### COUNT III
### Violation of the Equal Protection Clause
### (U.S. CONST. amend. XIV; 42 U.S.C. § 1983)

120.    Plaintiff incorporates by reference paragraphs 1–90.

121.    The Equal Protection Clause prohibits the government from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Defendants' Reservation Policy violates Eagle Forum's right to equal protection by categorically banning religious organizations from using the Rotary Room.

122.    The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike" and prohibits the government from creating "arbitrary or irrational" distinctions between classes of people. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 446 (1985).

123.    Eagle Forum is similarly situated to the other organizations that Defendants have permitted to reserve the Rotary Room.

124.    Defendants prohibited Eagle Forum from using the Rotary Room, based solely on the Reservation Policy's exclusion of religious groups.

125.    The Reservation Policy is not facially neutral, and it specifically targets Eagle Forum's religious viewpoints and speech.

126.    The Reservation Policy and Defendants' actions therefore trigger strict scrutiny but neither serve a compelling interest nor are they narrowly tailored to achieve any purported compelling interest.

127.    The Reservation Policy and Defendants' actions therefore violate the Equal Protection Clause of the Fourteenth Amendment, facially and as-applied to Eagle Forum.

### COUNT IV
### Violation of the Alabama Religious Freedom Amendment
### (ALA. CONST. art. I, § 3.01)

128.    Plaintiff incorporates by reference paragraphs 1–90.

129.    "The purpose of the Alabama Religious Freedom Amendment ["ARFA"] is to guarantee that the freedom of religion is not burdened by state and local law; and to provide a claim or defense to persons whose religious freedom is burdened by government." ALA. CONST. art. I, § 3.01.

130.    Under ARFA, "[g]overnment shall not burden a person's freedom of religion even if the burden results from a rule of general applicability," unless the government "demonstrates that application of the burden to the person: (1) [i]s in furtherance

of a compelling governmental interest; and (2) [i]s the least restrictive means of furthering that compelling governmental interest." ALA. CONST. art. I, § 3.01.

131.  "[A]ny burden—even an incidental or insubstantial one—suffices to trigger strict scrutiny." *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980 F.3d 821, 840 (11th Cir. 2020).

132.  Defendants denied Eagle Forum the benefit of reserving the Rotary Room because Eagle Forum is a religious organization that seeks to practice and share its religious beliefs.

133.  Defendants' denial burdens Eagle Forum's religious freedom. Therefore, Defendants' actions and the Reservation Policy trigger strict scrutiny but neither serve a compelling interest nor are they the least restrictive means to accomplish any such interest.

134.  The Reservation Policy and Defendants' actions therefore violate the Alabama Religious Freedom Amendment, facially and as applied to Eagle Forum.

135.  Defendants' violation of ARFA arises from the same nucleus of operative facts described in Eagle Forum's federal constitutional claims above. The state-law claim does not predominate over the federal constitutional claims and raises no novel issues of state law.

**PRAYER FOR RELIEF**

Eagle Forum respectfully requests that this Court enter judgment against Defendants and provide the following relief:

A.  Declare that Defendants' Reservation Policy and associated practices, facially and as applied, violate Eagle Forum's rights under the First and Fourteenth Amendments to the United States Constitution and the Alabama Religious Freedom Amendment;

B.  Enter preliminary and permanent injunctive relief prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on

their behalf from enforcing the Reservation Policy both facially and as applied and through its associated practices challenged in this Verified Complaint;

C.  Award nominal damages from Defendants Board of Trustees of the Tuscaloosa Public Library, City of Tuscaloosa, City of Northport, and Tuscaloosa County;

D.  Award reasonable costs and attorney's fees; and

E.  Award any other relief this Court deems equitable, just, and proper.

Respectfully submitted this 10th day of March, 2026.

*s/ Joshua K. Payne*

JOSHUA K. PAYNE
AL Bar No. 1041-A55P
**CAMPBELL MILLER PAYNE, PLLC**
5955 Alpha Road, #1491
Dallas, Texas 75240
Telephone: (214) 316–7156
josh@cmppllc.com

RYAN TUCKER*
AZ Bar No. 034382
MARK LIPPELMAN*
AZ Bar No. 036553
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444–0020
rtucker@ADFlegal.org
mlippelmann@ADFlegal.org

DAVID A. CORTMAN*
GA Bar No. 188810
TRAVIS C. BARHAM*
GA Bar No. 753251
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road N.E., Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
dcortman@ADFlegal.org
tbarham@ADFlegal.org

TYSON C. LANGHOFER*
VA Bar No. 95204
**ALLIANCE DEFENDING FREEDOM**
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707–4655
Facsimile: (571) 707–4656
tlanghofer@ADFlegal.org

**\*** *Pro hac vice* motion forthcoming.

*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT

I, REBECCA GERRITSON, a citizen of the United States and a resident of Alabama, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 25th day of February, 2026, in Birmingham, Alabama.

REBECCA GERRITSON